```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/9/19
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAFAEL GARCIA VASQUEZ,

        Plaintiff,

-against-

LA ROLA RESTAURANT, INC. and
ROLANDO FELIZ,

        Defendants.

17-CV-7899 (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge**.

The Court has received and reviewed the parties' joint letter dated February 27, 2019 (Dkt. No. 41), seeking approval of their proposed Settlement Agreement and Release (Agreement) (Dkt. No. 41-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The Agreement was reached after the parties participated in a series of settlement conferences before me. On March 14, 2019, the parties consented to my jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. No. 42.) For the reasons that follow, the Agreement will be approved and this action will be dismissed.

### Settlement Terms

The Agreement requires defendants La Rola Restaurant, Inc. (La Rola) and Rolando Feliz to pay $18,000 to plaintiff Rafael Garcia Vasquez in in full settlement of plaintiff's wage and hour claims, all brought pursuant to the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL). Ag. ¶ 1. Plaintiff's claims all arise out of his work as a cook at defendants' restaurant, known as "La Rola," in the Bronx, New York. Joint Ltr. at 1-2. The Agreement allocates $11,634 to plaintiff, and the remaining $6,366 to plaintiff's counsel, of which $549 is reimbursement for counsel's costs and $5,817 (one-third of the net settlement amount, after deduction of costs) will

be paid to counsel as an attorney's fee. Ag. ¶ 3(a)-(c). The settlement consideration is to be paid at the rate of $500 per month over 36 months. *Id.*

In the event defendants default on a payment and fail to cure that default within ten days after receipt of a written Notice of Default sent by plaintiff, plaintiff will be entitled to file an Affidavit of Confession of Judgment (Affidavit of Confession), pre-signed by individual defendant Feliz on behalf of himself and corporate defendant La Rola, in the amount of $54,000 – a sum chosen because it is "a multiplier by three of the total settlement amount." Ag. ¶ 6 & Ex. B; Joint Ltr. at 3. In addition, plaintiff will be entitled to file the Affidavit of Confession if he delivers three notices of default in any one year (even if the first two are cured). Ag. ¶ 6. Contemporaneously with filing the Affidavit of Confession, plaintiff must file a Partial Satisfaction of Judgment "crediting Defendants with any payments made to Plaintiff under this Agreement." *Id.*

The Agreement includes mutual releases, in which plaintiff releases defendants from any wage and hour claims he may have, including claims under the FLSA and NYLL, and defendants release plaintiff from "any and all claims which Defendants have or may have against Plaintiff arising from or relating to Plaintiff's employment with Defendants or separation therefrom." Ag. ¶¶ 9-10. The Agreement also contains a mutual non-disparagement provision, which prohibits the parties from making statements that "reflect adversely" on an opposing party, but expressly permits plaintiff to make "accurate statements" concerning either this action or the Agreement. Ag. ¶ 11. There is no confidentiality clause. The Agreement is governed by New York law. *Id.* ¶ 13. It is signed by the parties, with individual defendant Feliz signing twice: once on his own behalf and once as the Principal of La Rola. *Id.* at p. 10.[1]

---

[1] After initially appearing *pro se*, Feliz obtained limited-scope representation by a volunteer attorney through the New York Legal Assistance Group. (Dkt. No. 28.) *Pro bono* counsel ably assisted

2

### The Confessed Judgment Provision

The Court notes that ¶ 6 of the Agreement, summarized above, could under certain circumstances permit the plaintiff to obtain a confessed judgment in a sum wildly disproportionate to the amount of any remaining unpaid settlement consideration. For example, if defendants timely pay the first 33 installments, in the aggregate amount of $16,500, but miss the last three payments, in the aggregate amount of $1500, and fail to cure, plaintiff would be entitled to file the Affidavit of Confession in the amount of $54,000 (three times the total settlement consideration), "plus interest from October 13, 2017" (Ag. Ex. B, ¶ 7), offset only by a Partial Satisfaction of Judgment in the amount of $16,500 (the actual dollars paid to date). Ag. ¶ 6. Plaintiff would thereby be entitled to recover the net sum of $37,500 ($54,000 minus $16,500), plus interest from October 13, 2017, which would be more than 25 times the actual unpaid settlement consideration. *Id*. In addition, plaintiff would be entitled to his "reasonable attorneys' fees and costs" incurred to obtain and enforce the confessed judgment. *Id*.

The purpose of the judicial review process mandated by *Cheeks* "is to ensure 'that the agreement is fair and reasonable to the *plaintiff*.'" *Cabrera v. CBS Corp.*, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019) (quoting *Seck v. Dipna Rx, Inc.*, 2017 WL 1906887, at *3 (S.D.N.Y. May 8, 2017)) (emphasis added). *See also Cheeks*, 796 F.3d at 207 (the FLSA is a "uniquely protective statute" designed "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees"). Therefore, the potential unfairness of the confessed judgment provisions to the *defendants* (particularly if those provisions are invoked late in the installment payment schedule, which is when the disproportion between the amount of the

---

Feliz during the January 23, 2019 settlement conference and thereafter, and signed the February 27, 2019 joint letter on his behalf.

3

default and the amount of the judgment would be the greatest) is not a barrier to judicial approval of the Agreement under *Cheeks* and its progeny.

The Court must consider, however, whether that same potential unfairness could result in the invalidation of the confessed judgment provision under ¶ 14 of the Agreement (which permits a court of competent jurisdiction reform or discard any part of the settlement contract declared to be "illegal or invalid," without affecting the validity of the remaining provisions), and, if so, whether the resulting Agreement would be unfair to the *plaintiff*.

Under New York law, a liquidated damages provision "which requires, in the event of contractual breach, the payment of a sum of money grossly disproportionate to the amount of actual damages provides for penalty and is unenforceable." *Truck Rent-A-Ctr., Inc. v. Puritan Farms 2nd, Inc.*, 41 N.Y.2d 420, 424, 361 N.E.2d 1015, 1018 (1977) (collecting cases).

> The rule is now well established. A contractual provision fixing damages in the event of breach will be sustained if the amount liquidated bears a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation. If, however, the amount fixed is plainly or grossly disproportionate to the probable loss, the provision calls for a penalty and will not be enforced.

*Id.*, 41 N.Y.2d at 425, 361 N.E.2d at 1018 (citations omitted). Thus, while liquidated damages are not "transformed into a penalty" merely because they are intended in part to "incentivize" the counterparty to honor his contractual obligations, such damages must not be "grossly out of scale with foreseeable losses." *Bates Advert. USA, Inc. v. 498 Seventh, LLC*, 7 N.Y.3d 115, 120, 850 N.E.2d 1137, 1140 (2006).

This principle has frequently been applied to settlement agreements. *See, e.g., Quaker Oats Co. v. Reilly*, 274 A.D.2d 565, 566, 711 N.Y.S.2d 498, 500 (2d Dep't 2000) (holding that a provision increasing the balance on a $355,000 note executed in settlement of a federal civil lawsuit by an additional $125,000 in case of nonpayment was "an unenforceable penalty because

its purpose was to secure performance by threat of a large payment rather than to provide a reasonable assessment of probable damages," notwithstanding that "plaintiff might have recovered much more had it continued with its Federal action"); *Zervakis v. Kyreakedes*, 257 A.D.2d 619, 620, 684 N.Y.S.2d 291, 292 (2d Dep't 1999) (where defendant paid $36,000 of the $40,000 settlement consideration, but failed to make the *last* payment of $4000 on time, plaintiff could not enforce a confessed judgment in the amount of $100,000, less the $36,000 already paid, because the net recovery of $64,000 would be "so disproportionate to the actual damages caused by the delay in payment that it constitutes an unenforceable penalty"); *cf. ABCO Refrigeration Supply Corp. v. Designs by Keiser Corp.*, 239 A.D.2d 165, 165, 657 N.Y.S.2d 638, 639 (1st Dep't 1997) (where defendants failed to make the *first* installment payment under a $20,000 settlement reached in open court, plaintiff was entitled to enforce a confessed judgment in the amount of $37,000, which was "virtually identical to its original claim" in the underlying litigation).

    As illustrated by the cases cited above, challenges to liquidated damages provisions in settlement agreements depend on multiple factors, including the degree of disproportion between the alleged penalty and the amount owed at the time the remedy is invoked. For this reason, among others, I cannot determine in advance whether ¶ 6 of the Agreement will or will not be found "illegal or invalid" in a hypothetical challenge during enforcement proceedings in this action.

    I can and do find, however, that even if plaintiff is unable to enforce ¶ 6 fully, the Agreement will not thereby be rendered unfair to him. The purpose of ¶ 6 is not to confer a $54,000 windfall on plaintiff; it is to reduce the risk that that he is unable to collect the $18,000 that he agreed to accept in settlement. Even if ¶ 6 were stricken entirely, plaintiff would still have a contractual right to that $18,000, and a variety of remedies available to him in the event of a breach by defendants. Moreover, the parties expressly gave any court of competent jurisdiction the ability

to "blue-pencil" a provision found to be invalid or illegal; that it, to "conform[]" it "to a valid provision most closely approximating the intent of the invalid provision." Ag. ¶ 14. Thus, the court presiding over the parties' dispute at the time of any challenge to ¶ 6 (or any resulting judgment) would likely have options other than enforcing the confession of judgment provisions as written, on the one hand, or striking them entirely, on the other.

## Conclusion

After careful review, including consideration of the issues raised by ¶ 6, I find that both the economic and the non-economic terms of the Agreement are fair and reasonable to plaintiff. I further find, based in part on the Court's supervision of some of the settlement negotiations, that plaintiff was represented by competent counsel who negotiated the Agreement with defendants vigorously and at arms' length.

For these reasons, it is hereby **ORDERED** that this action is **DISMISSED** with prejudice and without costs. At the parties' request (*see* Ag. ¶ 21), the Court will retain jurisdiction for the limited purpose of enforcing the Agreement, if necessary.

The Clerk of the Court is directed to close the case.

Dated: New York, New York
April 9, 2019

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

6